·Ellen HOWLEY, Plaintiff,

v.

**TOWN OF STRATFORD and William Holdsworth, Defendants.**

**No. 3:97–CV–00532(AVC).**

United States District Court, D. Connecticut.

Aug. 5, 1999.

Karen Lee Torre, Michelle N. Holmes, New Haven, CT, for Ellen Howley, plaintiff.

Richard J. Buturla, Warren L. Holcomb, Berchem, Moses & Devlin, P.C., Milford, CT, for Town of Stratford, defendant.

John F. Fallon, Owens, Schine & Nicola, PC, Fairfield, CT, for William Holdsworth, defendant.

## RULING ON THE DEFENDANT, TOWN OF STRATFORD'S, MOTION FOR SUMMARY JUDGMENT

COVELLO, Chief Judge.

This is an action for damages and equitable relief brought by Ellen Howley against her employer, the Town of Stratford ("Stratford"), and her co-worker, the defendant, William Holdsworth. The complaint alleges causes of action for employment discrimination and hostile environment sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b), a violation of constitutional rights pursuant to 42 U.S.C. § 1983, and common law tenets concerning intentional infliction of emotional distress.

The defendant, Town of Stratford, now moves, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 9(c), for summary judgment arguing that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.

The issues presented are: 1) whether Stratford's failure to promote Howley was the product of intentional discrimination because of her gender; 2) whether Stratford allowed the creation and maintenance of a hostile work environment; 3) whether Stratford is liable under § 1983 for depriving Howley of her constitutionally protected rights under color of state authority; and 4) whether Stratford's conduct evident here rises to a level sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress.

For the reasons hereinafter recited, the motion for summary judgment is granted.

## FACTS

Examination of the complaint, affidavits, pleadings, exhibits, supplemental materials and the Rule 9(c) statements of material fact accompanying the motion for summary judgment, and the responses thereto discloses the following undisputed material facts.

In October 1982, the Town of Stratford hired Howley as a firefighter and on July 11, 1989, the town promoted Howley to lieutenant.

In June 1992, the town closed one of its firehouses in order to cut costs. This closing required the town to demote Howley and three other firefighters from the rank of lieutenant to that of private and lay off several other firefighters.

Howley and the rest of the firefighters in Stratford are members of and represented by the International Association of Firefighters ("the union"). In response to the town's decision to close the firehouse, the union filed a grievance challenging the firehouse closure.

In January 1994, while the union's grievance was still pending, Stratford announced that it was seeking to fill the position of assistant chief within the fire department. One requirement of consideration for the position was four years experience as a "line officer."

Howley did not have the four years of experience necessary to apply for the position. It is undisputed that if the town had not closed the firehouse in 1992, and Howley had not been subsequently demoted, that she would have had the requisite experience for the job.[1]

---

1. No documentation from any of the parties explicitly defines the term "line officer."

Since it was unclear whether Howley would be reinstated to the rank of lieutenant pending the outcome of the union's grievance (and therefore have the necessary experience as a line officer), one Roger Macey, chief of the Stratford fire department, told Howley to "put in the application and see what happens."

On March 3, 1994, the town informed Howley that she would not be allowed to take the test because she lacked the requisite experience. However, since the union's grievance was still unresolved, the town ultimately agreed to let Howley take the assistant fire chief examination on a conditional basis, pending resolution of the grievance and determination of Howley's seniority.

On March 10, 1994, Howley and five other individuals took the examination before an outside panel of assessors. Howley ranked fifth out of six candidates and the assessment panel recommended her to the town with "serious reservations," adding that Howley "would benefit greatly with more training and experience."

On July 28, 1994, the town informed Howley that she would not be considered further for the position because: 1) the grievance had been resolved and Howley had not been retroactively reinstated to lieutenant so she lacked the experience necessary for promotion to assistant chief, and 2) that fact notwithstanding, the town was considering only the top three candidates based on their performance on the exam.

On April 12, 1995, Howley and the defendant, William Holdsworth, attended a Firefighters Benevolent Association meeting at the Stratford fire department. The purpose of the meeting was to consider two applicants for membership in the association.

However, from examination of the materials before the court, it is at least clear that the position of lieutenant is one such officer post. Had Howley continued in the rank of lieuten-

Holdsworth was off-duty at the time of the meeting, and Howley was asked to attend even though she was on duty because the membership needed a quorum.

As she entered the meeting, Howley said that the members should "Just vote no" regarding one of the applicant's with whom Holdsworth was friendly. Holdsworth responded by angrily telling Howley to "shut the fuck up, you fucking whining cunt." He thereafter made further inappropriate remarks concerning Howley's menstrual cycle.

Neither of the gentlemen considered during the meeting were offered membership. After the meeting, in response to the admonitions of several other firefighters that he should apologize to Howley for his outburst, Holdsworth yelled in Howley's direction that "[t]here is no fucking way that I will fucking apologize to the fucking cunt down there."

When Howley confronted him about his behavior, Holdsworth launched into an extended barrage of obscene verbal abuse, including at least one comment to the effect that the reason she did not make assistant chief was because she did not "suck cock good enough and only made lieutenant."

Stratford has a "no tolerance" policy concerning sexual harassment in the workplace.

Howley immediately complained to her supervisor, one Joseph Cremin, and submitted a written complaint the next day. A formal investigation was conducted by one Ronald Natrass, deputy chief, who confirmed the events of April 12, 1995 and recommended that Holdsworth apologize to Howley and the rest of the unit and be suspended for two days without pay.

On May 20 and May 21, 1995, Holdsworth served his two day suspension.

ant from her promotion in 1989 until the job opening for assistant chief in 1994, this tenure as a lieutenant would have satisfied the four year requirement.

Since April 12, 1995, Howley and Holdsworth have never been assigned to the same shift at the fire department and have worked together on only a few occasions when one or the other has been called back to a scene after his or her shift has ended.

**STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Rule 56(c) provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the non-moving party "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980).

Further, a trial court "ha[s] power on its own motion to enter summary judgment against a party who was the original mov-

er." *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.1970) (citation omitted), *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970).

**DISCUSSION**

**1.  *Failure to Promote***

■  The town argues that Howley can defeat the motion for summary judgment only if she can show that the town's reasons for not promoting her to assistant chief are a pretext for discrimination. Specifically, the town argues that her lack of experience and inadequate test scores are legitimate, non-discriminatory reasons for not promoting Howley and that no rational trier of fact could find those reasons to be pretextual.

Howley responds that she has established a prima facie case of discrimination and that there is enough evidence to allow the cause of action to be decided by a jury. Specifically, she argues that four year requirement is "arbitrary," and that the town selectively applied the requirement in hiring practices based upon the applicant's gender.

"In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established an 'allocation of the burden of production and an order for the presentation of proof in Title VII cases.' " *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). With respect to indirect evidence of discrimination, the Supreme Court developed a three part test for Title VII discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[2] This test provides

2. It is undisputed that Howley's claims involve indirect evidence or discrimination and,

therefore, are properly analyzed pursuant to the *McDonnell Douglas/Burdine* framework.

that: 1) the plaintiff must establish a prima facie case; 2) the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its termination; and 3) the plaintiff must show that the defendant's proffered reasons are a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985). In order to prevail, the plaintiff must also show that: 1) the defendant's reason is false; and 2) the true reason is illegal discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[3]

While it is true that "[a] victim of discrimination is ... seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence[,]" *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991), "[e]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

Further, "the non-movant cannot defeat the motion [for summary judgment] through 'mere speculation or conjecture.' " *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986)).

Howley has satisfied the first prong of the *McDonnell Douglas/Burdine* framework since the evidence at first blush raises an inference of unlawful gender discrimination. The town has satisfied the second prong of the inquiry by articulating non-discriminatory reasons for its decision not to promote Howley to assistant chief. What remains to be decided by the court is whether a rational trier of fact could find that the town's proffered reasons are false and a pretext for discrimination.

Here, the court finds no credible evidence of pretext. It is undisputed that Howley did not have the four years of line officer experience necessary for the position of assistant chief, and that she scored second to last on the placement exam. Howley relies in large measure on the fact that the assessment panel that ranked her fifth of six candidates was comprised entirely of men. While this is sufficient to support a prima facie case of discrimination, it is not enough to defeat the town's motion for summary judgment. At the summary judgment phase of the proceedings the plaintiff can no longer rely simply on allegations but must submit evidence to support such allegations. Howley's contention that the four year requirement is arbitrary as applied and that the assessment panel exhibited gender bias are "mere speculation and conjecture" and find no support in the materials before the court. The Town of Stratford is entitled to decide the qualifications it requires of its personnel and to implement its policies uniformly. On this record, no rational trier of fact could find the town's reasons to be pretextual.

## 2. Hostile Work Environment

■ The town argues that, as a matter of law, there was no hostile environment created by Holdsworth's outbursts at the firefighters benevolent association meet-

---

**3.** Some panels in the second circuit have read *St. Mary's* broadly to allow the plaintiff to prevail upon a showing that discrimination was one of the factors contributing to an employment decision. In *Fields v. New York State OMRDD,* 115 F.3d 116, 121 (2d Cir. 1997), the court stated: "A Title VII plaintiff 'is not required to show that the employer's proffered reasons were false or played no role in the employment decisions, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.' " (quoting *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995)). The court acknowledges that the reconciliation of these seemingly divergent positions is squarely within the province of the second circuit. For the purposes of the within ruling, the court follows *St. Mary's* and concludes that Howley must show both that the town's proffered reasons are false and that the real reason was impermissible gender discrimination.

ing. Specifically, they argue that one incident of verbal abuse, of itself, is insufficient to create a hostile environment. The town further argues that even if the court finds a hostile environment, there is no basis for imputing Holdworth's conduct to the town because he was off duty at the time. Further, the town argues that since it provided a reasonable avenue for complaint and acted quickly to end the harassment there was no negligence on their part and, therefore, no liability.

Howley responds that the one instance of verbal abuse is sufficient to create a hostile environment. Specifically, Howley argues that the manner in which the harassment occurred, that is, in front of many of the other members of the fire department, increases the severity of the incident and serves to render the workplace hostile. Howley further argues that the town did not effectively remedy the hostile environment because its response was "neither appropriate nor adequate."

The second circuit has stated: "[i]n order the prevail on a hostile environment sexual harassment claim under Title VII, a plaintiff must establish two elements. First, she must prove that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Second, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Further, "[i]solated remarks or occasional harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 5 (2d Cir.1995).

"For racist [or sexist] comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial [or sexual] enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). "Conduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (emphasis added) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

"When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (quoting *Karibian v. Columbia University*, 14 F.3d 773, 780 (2d Cir.1994), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994)).

It is undisputed that Holdsworth was verbally abusive to Howley on the night of April 12, 1995, and that such conduct is out of place in a civilized society. However, one instance of verbal harassment, standing alone, is insufficient to create a hostile work environment. While a single incident of physical sexual assault may warrant a finding of a hostile work environment, *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995), the same cannot be said for abusive language. The court does not condone, and indeed views with palpable distaste the barrage of insults to which Howley was subjected but cannot find that, as a matter of law, Holdsworth's lack of tact created a hostile work environment. There is no evidence that Howley was ever harassed prior to the evening of April 12, 1995, nor that she has ever been harassed in the years since. Because the court finds that there was no hostile environment, it need not address the adequacy

of the town's response and sanction of Holdsworth.

### 3. Alleged § 1983 Violation

█ The town argues that Holdsworth was off duty on the night of April 12, 1995, and as such was acting in his capacity as an individual and not under color of law. Stratford argues further that, even if the court finds Holdsworth to have acted under color of authority, there is no basis for imputing to the town his actions because he was not acting in furtherance of any town custom or policy.

Howley responds that "the Town of Stratford has a custom or policy of allowing gender bias against women in the department."

The second circuit has sketched the basis for municipal liability under § 1983:

> [i]n order to establish liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. The inference that such policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction."

*Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991)).

"[I]t is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992) (quoting *Monell v. Department of Social Services of City of New*

*York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

There is no evidence that the Town of Stratford has a "custom or policy" of allowing gender bias. On the contrary, the town has in place a policy on sexual harassment expressly stating that "sexual harassment in the workplace is unacceptable and will not be tolerated." Further, the town's prompt investigation and sanction of Holdsworth following the events that are the basis of the within action militate against finding that the town has a "policy or custom" of allowing gender bias. Howley's bald assertion, without more, is insufficient to impute liability to the defendant, Town of Stratford.

### 4. Intentional Infliction of Emotional Distress

It is axiomatic that when all federal causes of action are disposed of prior to trial, a federal court should decline to exercise jurisdiction over any remaining state law claims. *See e.g., Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *DiLaura v. Power Authority of New York*, 982 F.2d 73, 80 (2d Cir.1992); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [arising under state law] if ... the district court has dismissed all claims over which it has original jurisdiction").

Based upon this precept, the court declines to exercise supplemental jurisdiction over the remaining cause of action in the complaint which arises under state law.[4]

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Document No. 24] is GRANTED. The court orders the case dismissed. It is so

---

4. Based upon the same precept, the court, *sua sponte,* orders the remaining state law cause of action for intentional infliction of emotional distress against the defendant, William

Holdsworth, dismissed. In so doing, the court makes no determination as to the merits of Howley's case against Holdsworth.

ordered this 5th day of August, 1999, at Hartford, Connecticut.